```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS X. NOLAN              :         CIVIL ACTION
                              :
       v.                     :
                              :
DUFFY CONNORS LLP, et al.     :         NO. 07-4075
```

MEMORANDUM

Dalzell, J.                                              April 2, 2008

      Third-party defendant Joseph Vaughan moves to dismiss the contribution claim brought against him for failure to state a claim upon which relief can be granted.  Although this motion obliges us to consider an important, but as yet definitively unanswered, question under the Uniform Contribution Among Tortfeasors Act that Pennsylvania has adopted, we now resolve that motion in favor of the third-party plaintiffs.

## I. Background

      Plaintiff Francis X. Nolan is a seventy-two-year-old lawyer who was admitted to the Pennsylvania bar in 1963 and thereafter had been a law firm associate, named partner, and solo practitioner.  Compl. ¶¶ 9, 15-16.  On or about November 15, 2001, Nolan joined the law firm then-named Vaughan Duffy & Connors LLP ("VDC") as a senior associate.  Id. ¶ 16.  At VDC, Nolan worked primarily on commercial litigation and insurance defense matters.  Id. ¶ 17.

Nolan alleges that in March of 2005, VDC hired a twenty-six-year-old associate with no previous legal experience, and the firm began shifting more and more of Nolan's commercial litigation work to this new associate. Nolan further alleges that in May of 2005 defendants Duffy and Connors "directed" Joseph E. Vaughan, first named partner at VDC and Nolan's nephew, "to request that Nolan consider retiring." Id. ¶¶ 19-21. Nolan told Vaughan that he had no intention of retiring. Nolan, Vaughan, and Duffy then met on June 15, 2005. Id. ¶ 23. Nolan avers that during this meeting Duffy and Vaughan repeated their request that Nolan retire, and said that they no longer had commercial work to give him. Id. Nolan responded that he did not want to retire, and was willing to take more insurance work. Id. ¶ 24. According to Nolan, Duffy then stated that "we can't have a seventy-one year old guy representing the insurance companies," and insurance carriers would be unlikely to approve of Nolan representing them because of his age. Id. ¶ 25. Nolan also claims that Duffy told him that VDC would be hiring more young associates who were capable of working and billing more hours. Id. ¶ 26. "When Nolan again refused to 'retire,' he was told that his employment was terminated effective June 30, 2005." Id. ¶ 27.

Nolan asserts claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") against his former employer's alleged successor in interest, Duffy Connors LLP, and its principals, Patricia S. Duffy and Kevin L. Connors.  Claims against Vaughan were conspicuously absent from the complaint.

Unsurprisingly, the defendants then filed a third-party complaint against Vaughan for contribution.  The third-party plaintiffs aver that Vaughan was present for, participated in, and agreed with the decision to terminate Nolan.  Third-Party Compl. ¶¶ 4-7.  Vaughan now moves to dismiss the third-party complaint under Fed. R. Civ. P. 12(b)(6).

## II.  Analysis[1]

---

[1] In reviewing a motion to dismiss for failure to state a claim, "[w]e accept all well pleaded factual allegations as true and draw all reasonable inferences from such allegations in favor of the complainant." Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).

To survive a motion to dismiss, the plaintiff must "allege facts sufficient to raise a right to relief above the speculative level." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 317 (3d Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  The complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. This requires "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272 at *1 (3d Cir.

Vaughan argues that we should dismiss the third-party complaint because the third-party plaintiffs have no right to contribution under the ADEA or PHRA.

Vaughan is undoubtedly right that the ADEA on its face creates no right of contribution.  Nothing in the statute points to an explicit right of contribution.  Moreover, neither Title VII of the Civil Rights Act nor the Americans with Disabilities Act ("ADA") -- the statutes upon which the ADEA is based -- contains an implied right of contribution. See Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, 451 U.S. 77, 98 (1981) (holding no implied right of contribution in Title VII); Bowers v. Nat'l Collegiate Athletics Ass'n, 346 F.3d 402, 429-30 (3d Cir. 2003) (holding no implied right of contribution in ADA claim based on Northwest).  From this we infer that no such implied right of contribution exists under the ADEA.

Vaughan further argues that if the ADEA, Title VII, and ADA do not have a right to contribution, and the PHRA is interpreted in parallel with all of these statutes, then there is no right to contribution under the PHRA.  Unfortunately for

---

Jul. 16, 2007) (unpublished) (quoting Twombly, 127 S. Ct. at 1969).

Vaughan, important differences between the federal statutes and the PHRA preclude our extending the holdings in <u>Northwest</u> and <u>Bowers</u> to the PHRA.

In <u>Northwest</u>, the Supreme Court answered the question of whether the Equal Pay Act and Title VII created either an explicit or implied right of contribution. 451 U.S. at 79-80. The plaintiff-employers had brought a suit for contribution against the labor union to which the successful Title VII employee-class belonged. <u>Id.</u> at 83. Both the Equal Pay Act and Title VII specifically make labor unions liable if they "cause or attempt to cause" an employer to discriminate against an individual. 29 U.S.C. § 206(d)(2); 42 U.S.C. § 2000e-2(c)(3). But the Supreme Court held that there was no right to contribution because Congress did not create such a right in the statutes, either explicitly or implied from its intent, and thus federal courts could not fashion a federal common law remedy. <u>Northwest</u>, 451 U.S. at 90-91.

If the Pennsylvania statutory scheme were congruent with the federal scheme there would indeed be no right of contribution under the PHRA. But Pennsylvania has a statute that, unlike its federal analogue, creates a general "right of contribution...among joint tort-feasors." 42 Pa. Cons. Stat.

Ann. § 8324(a).  In Pennsylvania, as with most jurisdictions that have adopted the Uniform Act, a defendant has a right to contribution if another is "jointly or severally liable in tort for the same injury to persons or property."  42 Pa. Cons. Stat. Ann. § 8322.  Thus, any tort-feasor has a right of contribution if such a party can establish that another is also liable to the plaintiff for the same injury.   Furthermore, unlike its federal cousins, the PHRA creates liability for any "person" or "employee" who "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any act declared by this section to be an unlawful discriminatory practice."  43 Pa. Cons. Stat. Ann. § 955(e).  Both federal district courts in this state and Pennsylvania's lower state courts have interpreted this portion of the PHRA as creating individual liability. See, e.g., Clinkscales v. Children's Hosp. of Philadelphia, 2007 WL 3355604, *8 (E.D.Pa. Nov. 9, 2007); Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998); Santarelli v. Nat'l Book Co. Inc., 1999 WL 1212992 (Pa. Ct. Com. Pleas 1998).[2]  Thus, both employers and employees –

---

[2] Although not bound by these decisions, we find them persuasive, and follow in their stead because to achieve any other result we would be obliged to torture the plain meaning of the Pennsylvania statute.

6

- indeed, any person -- can be liable for, and thus cause, the specific injury that plaintiffs seek to remedy through the PHRA.

But the statutory right and the possibility of individual liability are only necessary, but not sufficient, conditions to the existence of a right of contribution under Pennsylvania law. See, e.g., Atchison Casting Corp. v. Deloitte & Touche, 2003 WL 1847665, at *2-*3 (Pa. Com. Pl. March 14, 2003) (holding no contribution claim when underlying claim was for breach of fiduciary duty instead of fraud because the former sounds in contract). The cause of action in question must also sound in tort. See 42 Pa. Cons. Stat. Ann. §§ 8322, 8324 (a "right of contribution exists among joint tort-feasors." The statute defines "joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." Id. at § 8322 (emphasis added)). A PHRA claim is not a common law tort claim, and no court has directly confronted the issue of whether a PHRA claim operates as a tort claim for the purposes of establishing a statutory right of contribution under Pennsylvania law. Thus, we must engage in

the highly perilous business[3] of predicting what the state's highest court would do. See Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007).

In some important ways, Pennsylvania courts treat PHRA claims as a variety of tort. For example, PHRA claims are subject to the statute of limitations applicable to torts, and the Pennsylvania Superior Court so held because "[t]his cause of action charges intentional as well as tortious conduct and is thus within the ambit of the [statute of limitations for torts]", Raleigh v. Westinghouse Elec. Corp., 550 A.2d 1013, 1014 (Pa. Super. 1988), alloc. denied 563 A.2d 499 (Pa. 1989).

However, the Pennsylvania Supreme Court did not extend the tort analogy when it decided that there was no right to a jury trial in PHRA cases. Wertz v. Chapman Township, 741 A.2d 1272, 1273 (Pa. 1999). The Pennsylvania Supreme Court specifically held that the analogy to tort claims did not apply in Wertz. Id. at 1278-79. But Wertz decided that there was no right to a jury trial on PHRA claims because the Pennsylvania

---

[3]See Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 VA. L.REV. 1671, 1679-81 n. 53 (1992), where Judge Sloviter discusses the difficulty of making "Erie guesses", and cites specific cases where federal predictions of state supreme courts' rulings proved wrong.

8

civil jury trial right only applies to those causes of action extant at the time the Pennsylvania Constitution was ratified. Id. at 1278.  In fact, the Pennsylvania Supreme Court noted that its decision in Wertz did not undermine the analogy to torts in Raleigh.  Id. at 1278-79 n.4 ("We are cognizant of the Superior Court's decision in [Raleigh] in which the court made an analogy of a claim of discrimination under the PHRA to a tort claim for personal injuries in determining the proper statute of limitation.  While in that context, such an analogy may have been appropriate, for purposes of this opinion, in determining the right to a trial by jury, we find such an analysis...to be inapt.").

Thus, while the Pennsylvania Supreme Court is sometimes amenable to the view that the PHRA is tort-like, at other times it is not.  But the Pennsylvania Supreme Court does seem content to treat the PHRA as a tort outside the context of constitutional interpretation, and that would weigh in favor of holding that violation of the PHRA constitutes a tort for the purposes of claims for contribution.

A look at federal law fortifies this conclusion. Although we started by deciding not to interpret the PHRA parallel with its federal cousins because of differences between

9

the statutes, we will now return to the usual tandem interpretive process to resolve the question of whether the PHRA is a tort for the purposes of claims of contribution.  No Court of Appeals has directly addressed this particular issue, but most have, at least in passing, regarded a claim under Title VII, the ADA, or ADEA as a "statutory tort."  <u>Rogers v. Exxon Research & Engineering Co.</u>, 550 F.2d 834, 839 (3d Cir. 1977) (acknowledging that the ADEA is a "tort" though this alone does not suffice to permit damages for pain and suffering); <u>Elvig v. Calvin Presbyterian Church</u>, 397 F.3d 790, 793 (9th Cir. 2005) (Title VII sexual discrimination claim a statutory tort); <u>McLean v. Patten Communities, Inc.</u>, 332 F.3d 714, 722 (4th Cir. 2003) (Traxler, J., dissenting) (dissented because the Circuit affirmed district court decision dismissing a negligent supervision and retention claim because the underlying tort was the "statutory tort" created in Title VII rather than a common law tort); <u>Schobert v. Illinois Dep't of Transp.</u>, 304 F.3d 725, 731 (7th Cir.2002) ("Every tort, whether it be one derived from common law or a statutory tort like Title VII, requires a showing of harm"); <u>Fenton v. HiSAN, Inc.</u>, 174 F.3d 827, 829 (6th Cir. 1999) (Title VII creates statutory torts).

"Pennsylvania courts ... generally interpret the PHRA

in accord with its federal counterparts." Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir.2002) (citations omitted); see also Hoy v. Angelone, 691 A.2d 476, 480 (Pa. Super.), aff'd, 720 A.2d 745 (Pa. 1998) (holding Pennsylvania courts may look to federal decisions interpreting Title VII when examining PHRA claims). In particular, our Court of Appeals has held that PHRA claims are co-extensive with Title VII, and are subject to the same burden-shifting analysis as Title VII, the ADA, and ADEA. Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Thus, the PHRA creates statutory torts that cover the same types of harms as its federal cousins and augments the available federal remedies in important ways, e.g., the PHRA contains no statutory cap on damages, Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 571 (3d Cir. 2002), and provides for individual liability, 43 Pa. Cons. Stat. Ann. § 955(e). Since the PHRA creates a species of statutory tort liability, it does not seem a reach to hold that those liable under it are tort-feasors for purposes of Pennsylvania's contribution statute.

To properly implead a third-party defendant for contribution, the third-party plaintiff must aver a valid cause of action for contribution, i.e., allege that the third-party

11

defendant is liable for the same injury as the third-party plaintiff.  42 Cons. Stat. Ann. §§ 8322, 8324.  Here, the third-party plaintiffs allege that Vaughan is liable to Nolan under the same theory of liability as they are.  Third-party Compl. ¶¶ 3-9.  Therefore, to aver a valid cause of action against Vaughan, the third-party plaintiffs must allege facts that show Vaughan "aid[ed], abet[ted], incite[d], compel[ed], or coerce[d]" the alleged discriminatory decision to terminate Nolan from VDC.  42 Pa. Cons. Stat. Ann. § 955(e).  This they palpably have done when they claim that Vaughan was present for, participated in, and agreed with the decision to terminate Nolan.  Third-Party Compl. ¶¶ 4-7.  Nolan, in turn, alleges in his complaint (incorporated by reference in the third-party complaint) that his termination was explicitly motivated by his age and occurred during a meeting at which Vaughan was present and participating.  Compl. ¶¶ 23-27.  Taking all these facts to be true, and making all inferences in favor of the third-party plaintiffs, they could establish that Vaughan aided and abetted in VDC's decision to terminate Nolan, and that this decision was discriminatory.  These two facts could make Vaughan a joint tort-feasor and therefore liable to third-party plaintiffs in contribution if they pay more than their pro-rata share.

Federal Rule of Civil Procedure 14 "permits a party defendant who claims a right of contribution...from third persons to protect itself from potentially inconsistent verdicts by impleading the absent party."  <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.</u>, 11 F.3d 399, 412 (3d Cir. 1993).  Thus, the third-party plaintiffs can properly join Vaughan at this time and need not wait until after a liability determination in this suit to bring their contribution action.

BY THE COURT:

<u>/s/ Stewart Dalzell, J.</u>

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS X. NOLAN                  :      CIVIL ACTION
                                  :
        v.                        :
                                  :
DUFFY CONNORS LLP, et al.         :      NO. 07-4075
```

ORDER

AND NOW, this 2nd day of April, 2008, upon consideration of the third-party defendant Joseph Vaughan's motion to dismiss the joinder complaint (docket entry #14), the third-party plaintiffs' response, Vaughan's motion for leave to file a reply, and the reply, and for the reasons articulated in the accompanying Memorandum, it is hereby ORDERED that:

1.   Third-party defendant Joseph E. Vaughan's motion for leave to file a reply is GRANTED; and

2.   Joseph E. Vaughan's motion to dismiss is DENIED.

                                  BY THE COURT:


                                  /s/ Stewart Dalzell, J.